No. 34,334

VIRGIL A. FARR, *Appellee,* v. THE MID-CONTINENT LEAD AND ZINC COMPANY, Self-insurer, *Appellant.*

(98 P. 2d 437)

Opinion on rehearing filed January 27, 1940. Former opinion adhered to. (For original opinion of reversal see 150 Kan. 292, 92 P. 2d 124.)

*F. W. Boss, Marc Boss, Fred Walker,* all of Columbus, *Vern E. Thompson* and *Loyd E. Roberts,* both of Joplin, Mo., for the appellant.

*Charles Stephens* and *Jerome Harman,* both of Columbus, for the appellee.

*J. Herb Wilson,* of Salina, *J. N. Tincher, Clyde Raleigh,* both of Hutchinson, and *Leaford F. Cushenberry,* of Medicine Lodge, as *amici curiae.*

The opinion of the court was delivered by

SMITH, J.: This is a workmen's compensation case. Judgment was for claimant. Defendant appeals.

After the opinion reversing the judgment of the lower court was filed a rehearing was allowed. The appeal was reargued and submitted in December. This court adheres to the order of reversal. On account of the interest in the case among those who are interested in workmen's compensation, and because there are some other cases the outcome of which depends on the outcome of this case, it will be reconsidered somewhat at length here.

The first question to be settled is the jurisdiction of the commission to set aside an award. Therefore, the facts bearing on that matter, which are not disputed, will be stated first.

The claimant was injured on July 31, 1937, when a rock rolled down a slope where he was working and hit him on the leg. Toward evening this injury developed a swollen condition. The next morning he was placed under the care of the company doctor. On August 5 he was put in bed in the hospital, where he remained until September 18, 1937. On September 18 he was returned to his home, where he remained in bed for two weeks. On one occasion one of the doctors at the hospital told him he would see the straw boss at the mine and see if he could not get him some light work. The doctor stated that the exercise would be good for him. The boss at the mine told him, however, that they had no light work. During this time the company doctor diagnosed the trouble of claimant as "inflammation of the lymphatics" of the left leg. On October 30, 1937, a joint petition and stipulation was filed with the commission. This petition recited that both parties were operating under the workmen's compensation act; that respondent was a self-insurer, and that claimant met with a personal injury arising out of and in the course of employment with respondent. The petition then stated the diagnosis of the company doctor and gave his opinion that the disability of the workman would last for about three months, during which time he would be able to do light work. The stipulation then stated that the weekly rate of compensation to which claimant was entitled was $13.68; that all medical and hospital bills which had been incurred would be paid by respondent, and that the claimant had been paid eleven weeks' compensation at the rate of $13.68 per week, or $150.48.

The parties agreed that the balance of compensation to claimant should be paid in a lump sum of $150. The reason for the lump-sum payment was given in an affidavit by claimant wherein he stated that such a payment would be more beneficial to him than

the payment of a weekly compensation because by the investment of the $150 he could secure light work.

The stipulation then contained the following paragraph:

"The parties hereby waive notice and formal hearing herein and agree that the commissioner of workmen's compensation may make and enter an award herein, based upon the facts as set forth, said award to be binding and of the same effect as if the facts had been testified to and adduced at a formal hearing (and that said settlement will be accepted in full settlement of all claims arising out of or connected with said injury) that the costs herein may be taxed and assessed to the respondent."

This stipulation was signed by claimant and his attorney and by respondent, and was submitted to the commissioner of workmen's compensation on November 2, 1937. That officer made an award in which he recited the above facts, and in which it was provided as follows:

"6. That the parties agree the balance of compensation to claimant shall be paid in a lump sum of $150 in full settlement.

"7. The commissioner further finds the parties waive notice and formal hearing and agree that an award may be entered herein based upon the facts as set forth, said award to be binding and of the same effect as if the facts had been testified to and adduced at a formal hearing, and that said settlement will be accepted in full settlement of all claims arising out of or connected with said injury, and that the costs herein may be taxed and assessed to the respondent.

"The commissioner is of the opinion by reason of the foregoing stipulated facts that the claimant herein is entitled to compensation in the amount of one hundred fifty dollars ($150) in addition to the compensation heretofore paid, and that the respondent is liable to claimant for same. That in addition to such compensation the respondent, on behalf of claimant, shall pay all medical and hospital expenses incurred.

"Wherefore, award of compensation is hereby made in favor of the claimant, Virgil A. Farr, and against the respondent, Mid-Continent Lead & Zinc Company, a self-insurer, in the amount of one hundred fifty dollars ($150), in addition to the compensation heretofore paid, and the agreement between the parties that the compensation awarded herein be paid in one lump sum is hereby approved.

"Further award is made that the respondent pay the medical and hospital expense incurred herein."

On November 8, 1937, the receipt of claimant showing payment of the award of November 2, 1937, in full was filed with the commissioner. In this receipt the claimant acknowledged receipt of $300.48, which was the amount of the $150 provided for in the award, together with the amount paid prior to that time.

On June 6, 1938, counsel for claimant filed a letter with the com-

mission, in which claimant asked that the settlement just referred to be set aside on the ground of fraud and mutual mistake.

Respondent appeared and asked that this application be dismissed on the ground that the commission had no jurisdiction. On the filing of this motion claimant filed a more detailed application to set the settlement aside. This application set out some details with which we are not concerned just now, and alleged that the company doctor had told claimant that his injuries were only temporary, but that he was mistaken as to that; that both parties had relied on this statement of the doctor and had entered into the stipulation, when in truth and in fact claimant's condition was a permanent injury to his left leg, which injury would continue for the balance of his life.

The application further recited the treatment claimant had received at the hospital; that he had followed the directions of the doctor who was employed by respondent; that the doctor had stated to claimant that he was practically cured, and that it would be only a matter of three months until he could go back to his work; that the company doctor made the above statements while acting for and on behalf of the respondent, and was authorized to represent them in examining claimant and discovering and disclosing to claimant his physical condition; that being induced by these statements claimant signed a paper of some kind presented by respondent; that at the time of his signing this stipulation claimant's injuries were not temporary and it was not true that he had suffered no permanent injury, all of which was well known to respondent or with the exercise of reasonable care should have been known to it. The application further stated that the company doctor told both claimant and respondent that the injuries of claimant were only temporary and both claimant and respondent relied on this statement, when in truth and in fact his injuries were not temporary, but permanent.

The application further stated that the settlement in the sum of $150 was grossly inadequate, for the reason that it only embraced compensation due him for three months, whereas as a direct result of the injury claimant was entitled to compensation for permanent disability, and the consideration for the agreement was insufficient and unconscionable, and based upon a false representation by the doctor and mutual mistake of fact by claimant and respondent.

The prayer of the application was that the settlement and final receipt be set aside; that the commission set a date for the hearing

and upon this hearing determine the extent of the disability of claimant and make an award of compensation in accord therewith.

Respondent filed a motion to dismiss this application on the ground that the commission had no jurisdiction of it. This motion was overruled and the application was heard on its merits. The commissioner, in his history of the case, made a statement as follows:

"As to the question of setting aside the final release and award on joint petition and stipulation, the commissioner is of the opinion that the joint petition and stipulation filed on November 1, 1937, was nothing more nor less than a final release. No hearing was had as contemplated by the compensation act for the purpose of taking testimony, and the award issued was nothing more nor less than a written approval of an agreed settlement. Under such circumstances the claimant has a year within which to begin proceedings to set aside a final release, and claimant did institute proceedings to set aside the agreed settlement or final release and award within one year. The commissioner is therefore of the opinion and finds that the agreed settlement as set forth by the joint petition and stipulation, the award and the final receipt and report should be and the same are hereby set aside and held for naught."

The commission made findings that the weekly compensation rate to which claimant was entitled was $13.68; that the joint petition and stipulation and award and final receipt should be set aside, and the claimant was found to be entitled to compensation for a period not to exceed 415 weeks at the rate of $13.68 per week. The compensation then due and owing claimant was found to be for seventy weeks, or $957, which should be paid in one lump sum, and the balance paid at the rate of $13.68 per week. An award was made accordingly.

From this award the respondent appealed to the district court. That court considered the case on the transcript of evidence that was before the commissioner, and made findings as to the facts about as they have been detailed here, and further made the following finding:

"The court further finds that in making such settlement the claimant believed, acted and relied upon the statements made to him by respondent's doctor, M. A. Connell, and respondent's claim adjuster, Wesley Bullock, as to his condition, the nature and extent of his injury, and, assuming that said doctor and said claim adjuster were acting in good faith in negotiating and making such settlement, the court finds that the claimant and the respondent, acting through its doctor and claim adjuster, as its agents, were mutually mistaken as to the condition of claimant and the character and extent of his injury as same existed at the time of making such settlement; and the court further finds that the amount paid claimant by respondent in

such settlement was grossly inadequate, and that the settlement, joint petition and stipulation, and the award of November 2, 1937, and final receipt should be set aside and held for naught and further compensation should be granted.

"The court finds that the award of the workmen's compensation commissioner made on November 2, 1937, amounted to nothing more or less than the written approval by the commission of an agreed settlement entered into by and between the parties and that section 28 of the compensation act (G. S. 1935, 44-528) is not a bar to claimant's cause of action, and that, under section 27 of the compensation act (G. S. 1935, 44-527) claimant is entitled to relief on the ground of mutual mistakes of fact."

Judgment was entered in accordance with the above findings. Respondent has appealed to this court.

The first argument of respondent is that the commission's award of November 2, 1937, based upon an agreed statement of facts embodied in the joint petition and stipulation was a judgment of the commission and is controlled by G. S. 1935, 44-528, and that after the final payment of the award provided for therein the commission lost jurisdiction of the cause.

G. S. 1935, 44-528, provides as follows:

"At any time before, but not after, the final payment has been made under or pursuant to any award or modification thereof agreed upon by the parties, it may be reviewed by the commission upon good cause shown upon the application of either party, and in connection with such review the commission may appoint a physician or surgeon, or two physicians or surgeons to examine the workman and report to the commission, and the commission shall hear all competent evidence offered, and if it shall find that the award has been obtained by fraud or undue influence, or that the committee, or arbitrator, making the award acted without authority, or was guilty of serious misconduct, or that the award is excessive or inadequate, or that the incapacity or disability of the workman has increased or diminished, the commission may modify such award upon such terms as may be just by increasing or diminishing the compensation subject to the limitations hereinbefore provided in this act; and if the commission shall find that the workman has returned to work for the same employer in whose employ he was injured or for another employer and is earning the same or higher wages than he did at the time of the accident or injury, or is gaining an income from any trade or employment which is equal to or greater than the wages he was earning at the time of the accident or injury, or shall find that the workman has absented himself and continued to absent himself so that a reasonable examination cannot be made of him by a physician or surgeon selected by the employer, or has departed beyond the boundaries of the United States, the commission shall cancel the award and end the compensation: *Provided,* That the provisions of this section shall not apply to an award of compensation provided for in the schedule of specific injuries in section 10 (44-510) of this act."

Attention is called to the first provision of the above section,

which provides that the action contemplated by the commission may be taken "at any time before, but not after, the final payment has been made under or pursuant to any award or modification thereof agreed upon by the parties."

Respondent points out that the application to set aside the award in this case was made after the final payment.

Claimant points out G. S. 1935, 44-527. That section is as follows:

"At the time of making any final payment of compensation, the employer shall be entitled to a final receipt for compensation, executed and acknowledged or verified by the workman, which final receipt may be in form a release of liability under this act, and every such final receipt for compensation or release of liability or a copy thereof shall be filed by the employer in the office of the commission within sixty (60) days after the date of execution of such final receipt or release of liability, and if the employer shall fail or neglect to so file such final receipt or release of liability, the same shall be void as against the workman. The commission shall accept, receipt for, and file every agreement, finding, award, agreement modifying an award, final receipt for compensation or release of liability or copy thereof, and record and index same, and every such agreement, finding, award, agreement modifying an award, final receipt or release, shall be considered as approved by the commission and shall stand as approved unless said commission shall, within twenty (20) days of the date of the receipt thereof, disapprove same in writing and notify each of the parties of its disapproval, giving its reasons therefor, sending a copy of the same to each of the parties by registered mail: *Provided,* No proceedings shall be instituted by either party to set aside any such agreement, release of liability, final receipt for compensation or agreement modifying an award, unless such proceedings are commenced within one (1) year after the date any such agreement, release of liability, final receipt for compensation or agreement modifying an award has been so filed and approved by the commission."

The commissioner of workmen's compensation and the trial court both took the position that the so-called award of November 2 was nothing more than a final release under the terms of the above section, and that proceedings could be begun within a year after the giving of the final release to set it aside pursuant to the rule laid down in *Odrowski v. Swift & Co.*, 99 Kan. 163, 162 Pac. 268, where this court held that releases could be set aside on any ground upon which a contract could be canceled, in this case for fraud or mutual mistake of fact. We thus are confronted with the question of which of the two foregoing sections is applicable to this case. If the action of the commission in this case be held to be an award, as spoken of in G. S. 1935, 44-528, then the proceedings to set it aside were brought too late and should have been dismissed.

The joint petition and stipulation, which was executed by both parties, stated that the commissioner might "make and enter an award based upon the facts set forth." Both the claimant and respondent were represented by counsel. Their stipulation was submitted to the commission, which acted on it. The instrument by which the commission evidenced its action was called an award. This instrument was in terms an award as plain as language could make it.

This court has considered the question of modification of awards in compensation cases many times. In *Corvi v. Crowe Coal & Mining Co.*, 119 Kan. 244, 237 Pac. 1056, the original award had all been paid but the last payment. A check was given for that payment, but was not cashed. Subsequently proceedings were commenced to modify the award on the ground that it was grossly inadequate.

This court said:

"The court might have found that the check given by defendant in good faith for the final installment of the award was accepted by plaintiff as cash, that the award had been paid, and consequently that the action was barred under the statute, which reads as follows: . . ." (p. 245.)

This court then quoted R. S. 44-528, the provisions of which are substantially the same as those of G. S. 1935, 44-528, the section relied on here. This court then said:

"The court did not find, however, that final payment had been made, and on June 29, 1922, it reviewed and modified the award." (p. 246.)

Thus this court held that had there been a final payment of the first award in that case as there was in this case the matter would have ended there and there would have been no modification at all.

*De Millsap v. Century Zinc Co.*, 123 Kan. 570, 256 Pac. 1036, was a case where the workman filed a petition to review and modify an award. The original award had been for a lump-sum payment of the amount already due and the balance in weekly payments. The defendant made the payments for a time and then tendered the plaintiff eighty percent of the amount still due. Plaintiff refused to accept this payment, and while the application of defendant to compel plaintiff to accept this final payment was pending, filed the application to review and modify the award upon the ground that the disability of the plaintiff had increased. R. S. 44-531 provided the liability under an award might be redeemed by a payment of eighty percent of the award at any time after payments had been

made under the award for six months. This court held that these payments had not been made for six months, as required by the statute, before a lump-sum settlement could be made and that the motion of the defendant to compel the plaintiff to accept the lump-sum payment was correctly overruled.

As to the application of the plaintiff to modify the award, this court quoted the language used in the opinion in *Corvi v. Crowe Coal & Mining Co.*, supra, and said: "Such a review and modification may be made at any time before the final payment has been made."

In *Murphy v. Cook Construction Co.*, 130 Kan. 200, 285 Pac. 604, the workman was injured by having cement blown in his eyes. He made a timely application for compensation for the loss of his right eye. All the details were stipulated and a proper award was made. Within a little more than four months after the injury the workman made an application for compensation in which he alleged that his left eye had been injured at the same time. This court held that the application was too late because it was filed more than three months after the injury. In addition, this court said:

"It is true, of course, that the statute contemplates the possibility that where a claim has been timely made and an award made thereon, such an award may afterwards be raised or lowered before final payment is made if subsequent developments justify it."

This court then cited the cases of *Corvi v. Crowe Coal & Mining Co.* and *De Millsap v. Century Zinc Co.*, supra, and said:

"If appellant had made a timely claim for compensation for injury to his left eye, and some award had been made therefor and not paid in full, it might very well be shown by lapse of time and subsequent developments that such award was insufficient and ought to be increased. But no such case is here. Moreover, in this case the award for the loss of the right eye and for which compensation had been timely demanded had been fully paid." (p. 202.)

*Doss v. Cornelison & Kelly*, 124 Kan. 631, 261 Pac. 584, was a case where an award had been made, and later, but before final payment of the award, the workman filed an application to increase the compensation. The trial court dismissed the application apparently on the theory that it was without jurisdiction to review the award because the application for the increased compensation was not filed within a year after rendition of final judgment, as required by the provisions of the civil code relating to petitions for a new trial. This court held that the civil code was not applicable in a workmen's compensation case, and said:

"The proceeding is controlled by the provisions of the workmen's compensation act. (*Corvi v. Crowe Coal & Mining Co.,* 119 Kan. 244, 237 Pac. 1056.) The stay of execution and defendant's bond were executed in accordance with the provisions of section 18 of that act (R. S. 44-530), which provides for such bond when there is question of the employer's financial ability to pay. Section 16 of the act (R. S. 44-528) provides for modification of the award at any time before final payment." (p. 632.)

*Indihar v. Western Coal & Mining Co.,* 119 Kan. 748, 241 Pac. 448, was a proceeding for compensation. A judgment was given the workman for compensation in a lump sum for the amount due and to run a specified time. Subsequently proceedings were had to modify the award, and the award was modified. The defendant appealed on the ground that the trial court had entered a judgment as a result of the first proceeding and once entered this judgment was a finality and could only be disturbed or overthrown in the manner pointed out in the code of civil procedure. This court held that the code of civil procedure did not apply, quoted R. S. 44-528, and the syllabus from *Corvi v. Crowe Coal & Mining Co.,* supra, as follows:

" 'The workmen's compensation act provides that at any time before final payment of an award has been made the award may be reviewed, and if the court shall find that incapacity of the workman has increased, the award may be modified accordingly. This provision authorizes review and modification of an award which has been previously reviewed and modified.' " (p. 750.)

In *Hardwell v. St. Louis S. & R. Co.,* 146 Kan. 870, 73 P. 2d 1120, compensation was awarded. On appeal the respondent argued that the evidence was not sufficient to support an award. This court reviewed the evidence and affirmed the judgment. After holding that it was not necessary to prove the duration of disability by medical testimony this court said:

"Moreover, G. S. 1935, 44-528, provides a review may be had at any time before final payment of the award for good cause shown." (p. 876.)

The foregoing opinions have been cited and quoted from here because they evince a firm determination by this court to hold that it is necessary that a proceedings to modify an award must be started before the final payment of the award has been made.

Some of these cases arose under the workmen's compensation act as it was before it was amended in so many particulars by chapter 232 of the Laws of 1927. Some of them arose after the enactment of the above chapter. R. S. 44-528 covered the same general subject matter as section 28 of chapter 232 of the Laws of 1927. This sec-

tion is now G. S. 1935, 44-528. The only change made in R. S. 44-528 by section 28 of chapter 232 of the Laws of 1927 besides substituting the word "commission" in the new act where the word "court" had appeared in the old act was to add the words "but not after" to the first line of the section so that it now reads, "At any time before, but not after final payment has been made." The addition of these words at a time when the whole act was undergoing a general overhauling can only mean that the legislature reaffirmed what this court had held, that a proceeding to modify an award must be filed before final payment under or pursuant to an award. Any other conclusion would render the addition of these words meaningless. In connection with this it should be noted that among the grounds upon which an award may be modified is that the "award has been obtained by fraud or undue influence." It was clearly the intention of the legislature that an award could be modified for any proper cause provided the proceedings were commenced before final payment had been made.

Claimant argues that an injustice is done him by the first award, since it was for a lump sum of $150 payment and it was paid within a few days after the award was made, thus depriving him of an opportunity to discover the mistake. The fact is, however, that had this award provided for weekly payments based on the average weekly earnings of the claimant, the final payment would have been made long before the application to modify the award. No injustice was done the claimant on that account.

At this point we must consider the provisions of G. S. 1935, 44-527. The section has been set out already in this opinion, but the portion with which we are interested is as follows:

"No proceedings shall be instituted by either party to set aside any such agreement, release of liability, final receipt for compensation or agreement modifying an award, unless such proceedings are commenced within one (1) year after the date any such agreement, release or liability, final receipt for compensation or agreement modifying an award has been so filed and approved by the commission."

This section first appears in our laws as section 15 of chapter 226 of the Laws of 1917. The proviso last quoted above was not in that chapter, but was added when the compensation act was rewritten in 1927. It will be noted that the legislature contemplated that action to set aside a release, a final receipt or an agreement modifying an award, could still be filed even though it provided that the trial

of applications for compensation should be before a commissioner rather than the district court. What we are interested in, however, is that the above section provided for the filing of every "agreement, finding, award, agreement modifying an award, final receipt or release." While in the proviso limiting the time within which an action to set aside might be brought to one year, "agreement, release of liability, final receipt for compensation, and agreement modifying an award" are mentioned, "award" is not mentioned. This leads us to the conclusion that the legislature did not contemplate that any proceeding could be brought to set aside or overthrow in any way an award except as provided in G. S. 1935, 44-528.

The respondent, on the argument of the rehearing, furnished us with a copy of a rule of the commissioner of workmen's compensation that was in effect when this proceeding was had. This rule is as follows:

"In those cases where the parties desire to stipulate as to all the facts for the purpose of a determination by the commissioner and the rendition of an award, such may be done by the filing of a joint petition and stipulation containing all the necessary facts on which to base an award. If all the necessary facts are not stipulated to, there is not a proper foundation and an award cannot be made.

"All joint petitions and stipulations must be accompanied by a physician's report."

Surely the commission provided for just the procedure that was had in this case.

The respondent argues that in the practical administration of the act there must be as much finality about an award of the commissioner after the final payment has been made as there is to the final judgment of a court, and that this finality is provided by G. S. 1935, 44-528. This question was considered by this court in *Yehle v. Stamey-Tidd Const. Co.*, 150 Kan. 440, 94 P. 2d 328. This opinion was handed down after the original opinion in this case was filed. In that case the employer began paying compensation without any application. Later an application was filed and an award was made for compensation at the rate of $9 a week for twenty-six weeks. Later a stipulation was filed alleging that the claimant was desirous of making a lump-sum settlement of the award for ninety-five percent of the balance still owing. This application was approved, the award was modified and the respondent paid the balance due. Some months later the claimant filed an application to reopen the proceedings and to set them aside on alleged grounds of mutual mis-

takes, inadequacy of the award, and the continued incapacity of the claimant. This application was denied. Subsequently another application was made asking that the former award be set aside on account of a mutual mistake of fact. After some procedural steps, with which we are not interested here, the commissioner of workmen's compensation held that it was without jurisdiction to hear the application to modify the original award. From this ruling the claimant appealed to the district court. The respondents filed a motion to dismiss the appeal because of G. S. 1935, 44-528. The trial court held that the commissioner of workmen's compensation had jurisdiction to hear the application to set aside the award, but that in this case there was no evidence to warrant setting it aside.

The claimant appealed, claiming that the first award and the later modification of it were the result of a mutual mistake of fact, and that G. S. 1935, 44-528, was not controlling. The respondents filed a cross-appeal in which they contended that the commission did not have jurisdiction to entertain claimant's application to set aside the original award, and that the trial court erred in so holding. This court pointed out the provisions of G. S. 1935, 44-528, as well as G. S. 1935, 44-527, and referred to a statement by the trial court that the two sections were inconsistent, but that "reason, right and justice" demanded that the trial court follow the first section. This court then said:

"Certain aspects of G. S. 1935, 44-527 and 44-528, which provide for enlarging, diminishing or terminating an agreement concerning compensation or an award of compensation, at the instance of workman or employer, within one year after such agreement has been effected or such an award has been made, have been part of the compensation act since its first enactment. (Laws 1911, ch. 218, secs. 29, 32. G. S. 1915, secs. 5923, 5926.) Those provisions were rewritten with some procedural changes in 1917. (Laws 1917, ch. 226, secs. 15, 16, R. S. 44-527, 44-528.) In 1927 the act was again revised. (Laws 1927, ch. 232, G. S. 1935, 44-501 *et seq.*) This is the last expression of the legislative will on the two sections of the act under present scrutiny. In section 27 (G. S. 1935, 44-527) the principal change from its earlier text was the addition of a proviso which reads:

" *'Provided,* No proceedings shall be instituted by either party to set aside any such agreement, release of liability, final receipt for compensation or agreement modifying an award, unless such proceedings are commenced within one (1) year after the date any such agreement, release of liability, final receipt for compensation or agreement modifying an award has been so filed and approved by the commission.'

"As already quoted, section 28 (G. S. 1935, 44-528) provides for a review of an award or modification thereof agreed upon by the parties 'at any time before but not after the final payment has been made.'

"It will be noted that in the language of section 27 quoted above the right of workman or employer to institute proceedings within one year to set aside an agreement, release of liability, final receipt or agreement modifying an award, is recognized, although not expressly granted. However, such right is expressly granted in the first five lines of the succeeding section (sec. 28) and such proceedings may be instituted at any time before, but not after final payment has been made. Considering these sections together, it seems reasonably clear that there is a field of practical usefulness for both these statutory regulations. Ordinarily the allowance of compensation, however it was fixed, by agreement, award, or otherwise, may be reviewed—that is, enlarged, dimished, or terminated—at the instance of either party, unless final payment has been made. If final payment has been made, a complete finality is thereby reached, and no further proceedings can be entertained by the compensation commission. It follows that the compensation commission's ruling that it had no jurisdiction to hear claimant's application for a further review of the award after final payment of the modified award had been made was correct and should have been sustained by the trial court."

The above is the latest expression of this court upon the question we are now considering. It will be seen that there is the same finality about an award of compensation by the commission after the final payment has been made that there is to the judgment of a court of competent jurisdiction once the time for appeal has gone by.

It follows that the opinion of reversal published in *Farr v. Mid-Continent Lead & Zinc Co.*, 150 Kan. 292, 92 P. 2d 124, is adhered to.

WEDELL, J. (concurring specially) : I concur in the conclusion of the majority and in substance with most of what is said in the majority opinion on rehearing. Certain questions have been raised in the petition for rehearing filed by the claimant (appellee) and in petitions of *amici curiae* for rehearing filed by the firm of T. N. Tincher, Clyde Raleigh, both of Hutchinson, and Leaford F. Cushenbery, of Medicine Lodge, and J. Herb Wilson, of Salina, attorney for A. V. Lundgren, president of the Kansas State Federation of Labor, and in two dissenting opinions. In the light of those questions I desire to write my own views.

I welcome the petitions for rehearing. They have been particularly helpful in disclosing certain important questions which I confess we did not fully answer in our first majority opinion and certain questions of both law and fact, which, in my judgment, have not been made entirely clear in our second majority opinion. It is with reference to those particular questions, in regard to which it seems to me some clarification is both possible and desirable, that I am

concerned. In complete candor, however, I find it necessary at the outset to say that in view of our first opinion and the dissenting opinion, I am not at all surprised by the fact that certain petitions for rehearing have been filed, nor am I disturbed in the least concerning the soundness or justice of the majority view. Moreover, I am now persuaded, as never before, that time and reflection will completely demonstrate the correctness and manifest fairness of the majority view.

It will be my purpose to be helpful to the reader in obtaining a clearer view of the underlying reasons which prompted my own conclusions. All I ask of the reader is that he be equally fair and frank in the consideration of what I shall have to say.

Let us face immediately the question whether the instrument which was set aside was nothing more than an agreed settlement between the parties, approved by the commissioner, or whether it in fact constituted and was fairly intended to constitute what it clearly purported to be, namely, an award. In my candid opinion there is no basis whatsoever, in law or fact, for finding it to be anything other than an outright award fairly and squarely made at the time. If that is true then the only question which remains is whether it clearly appears the lawmakers intended it could not be set aside, after final payment.

Was this an award? Let me make my position on that question very clear. I assert if this was not an award, and was not actually intended to be an award, then no award can be rendered under the compensation law. Let the reader examine the pertinent part of that official act of the commissioner. It reads:

"Now on this 2d day of November, 1937, the above-entitled matter comes on *for consideration* on the stipulation of facts filed herein, *and the commissioner having considered said stipulation, and being duly advised in the premises, finds:*

. . . . . . . . . . . . . .

5. "That all medical and hospital expenses which have been incurred will be paid and assumed by the respondent; that the claimant has been paid eleven (11) weeks' compensation at the rate of $13.68 per week, or a total of $150.48.

6. "That the parties agree the balance of compensation to claimant shall be paid in a lump sum of $150 in full settlement.

7. "The commissioner further finds the parties waive notice *and formal hearing and agree that an award may be entered herein based upon the facts as set forth, said award to be binding and of the same effect as if the facts had been testified to and adduced at a formal hearing,* and that said settlement will

be accepted in full settlement of all claims arising out of or connected with said injury, and that the costs herein may be taxed and assessed to the respondent.

"*The commissioner is of the opinion by reason of the foregoing stipulated facts* that the claimant herein is entitled to compensation in the amount of one hundred fifty dollars ($150) in addition to the compensation heretofore paid, and that the respondent is liable to claimant for same. That in addition to such compensation the respondent, on behalf of claimant, shall pay all medical and hospital expenses incurred.

"Wherefore, *Award of compensation is hereby made* in favor of the claimant, Virgil A. Farr, and against the respondent, Mid-Continent Lead & Zinc Company, a self-insurer, in the amount of one hundred fifty dollars ($150), in addition to the compensation heretofore paid, and the agreement between the parties that the compensation awarded herein be paid in one lump sum is hereby approved.

"*Further award is made* that the respondent pay the medical and hospital expense incurred herein.

"Fees necessary to defray the expense of the administration of the workmen's compensation act in the amount of three dollars ($3) are hereby assessed against the respondent.                JAMES MALONE, *Commissioner.*

"Filed this 2d day of November, 1937." (Italics ours.)

It should be emphasized here that it has always been conceded if all the oral testimony concerning claimant's condition had actually been introduced it would have shown exactly what the stipulation of the parties disclosed. Claimant's present counsel advised us in oral argument on rehearing, that claimant was represented by a labor attorney in the negotiations leading up to and including the making of the award. The record discloses claimant was represented by an attorney. It also shows that attorney, prior to the making of the award, advised claimant this settlement by stipulation was final and that he would receive no more money on account of the injury. It is now contended and we are asked to hold that since oral testimony was not introduced no award was made and that the entire procedure amounted to nothing more than a mere agreement between the parties, with the approval of the commissioner. We are asked to hold the plain award was nothing more than such an agreement between the parties, notwithstanding the fact that the official act in express terms refutes the contention. We are asked to render such a judgment in the face of an undisputed record that the authorized official, the commissioner, found the parties had agreed in writing that: the parties waived a formal hearing; they agreed an "award" should be entered, based upon the stipulated facts; the "award" should be binding and to the same effect as if the facts

had been testified to and adduced at a formal hearing; the settlement made under the award would be accepted in full settlement of all claims arising out of and connected with said injury and that the commissioner had given his independent consideration to the stipulated facts and being fully advised found the "award" should be made, and made it.

The request is barren of all merit. If granted it would sanction not only the breach of contract between parties, but the repudiation of the official action of a quasi-judicial tribunal, fully authorized by law to make an award. I refuse to subscribe to such a doctrine.

In the first place, it is obvious that unnecessary confusion in reasoning, on this particular point, has resulted from a failure to clearly distinguish between an administrative function of the workmen's compensation commissioner and a question of law. Whether the commissioner may make an award without oral testimony does not present a question of law, but a question of administrative procedure. In my view there can be no possible question concerning the power or authority of the commissioner to render an award upon the stipulation of the parties. If he has no such authority then those of us who for years were actively engaged in representing mainly workmen in compensation cases are now suddenly to be awakened by the previously unheard-of doctrine that those awards so made, in good faith, in favor of the workman, never have been valid and binding. If the minority view is correct then every stipulation in a compensation case by the employer or insurance carrier which waived proof of notice of injury, timely claim and demand for compensation, etc., which has become a common practice in compensation hearings, is an absolute nullity. Such a ruling clearly would be unfair to and do violence not only to the workman, but would strike at the very heart of the intended purpose of the compensation act, which expressly directs the commissioner not to be bound by technical rules of procedure. (G. S. 1935, 44-523.) Fortunately, for all parties subject to the act, the majority of this court refuse to override the plain legislative mandates. G. S. 1935, 44-548, confers *full jurisdiction and power* upon the workmen's compensation commission for the supervision of the administration of the compensation act. That statute has been so often construed that no citation of authorities is really necessary. For a lengthy review, however, of our own decisions on this point see *Employers' Liability Assurance Corp. v. Matlock,* post, p. 293, 98 P. 2d 456

(this day decided). Manifestly, the commission has full jurisdiction and power to make a rule under which it would render an award upon the stipulation of the parties. No statute forbids it. In the case of *Walker v. Kansas Gasoline Co.*, 130 Kan. 576, 287 Pac. 235, so urgently pressed upon us by some of the petitioners for rehearing, this court settled that question, if indeed there could ever have been any question concerning such power. It said:

"The ordinary procedure for hearings before the commission may be used and its findings and decisions made without regard to technical rules of procedure. The fair implication of the act is that *any procedure which is appropriate and not prohibited may be employed.*" (p. 581.) (Italics ours.)

Pursuant to its administrative and quasi-judicial functions, the commission promulgated such a rule as a part of its procedure and it functioned under its provisions. That rule is now set forth in the second majority opinion to which this concurring opinion is attached. It never has been contended that the parties did not fully comply with both the substance and spirit of that rule. Nor has it ever been asserted the commissioner rendered the instant award except in strict conformity with every requirement of that rule. Nor has it ever been intimated this rule of an administrative and quasi-judicial tribunal was unreasonably, oppressively or discriminatorily administered. On what authority, then, can this court arbitrarily override the administrative functions of a commission and dictate its procedure? To hold in this case that we have such authority, in the face of long-established principle to the contrary, obviously would not constitute liberal interpretation of the compensation law, but plain unwarranted and unauthorized interference with the administrative policy of that tribunal. The majority refuse to participiate in such interference. The commission in keeping with its well-established policy and practice had prepared its own form of joint petitions to be used by applicants *for an award based upon the stipulation of the parties.* The form of the application, in which was to be inserted the necessary data, ended as follows:

"The parties hereby waive notice *and formal hearing herein and agree that the commissioner of workmen's compensation may make and enter an award herein based upon the facts as set forth, said award to be binding and of the same effect as if the facts had been testified to and adduced at a formal hearing,* and that costs herein may be taxed and assessed in the discretion of the commissioner." (Italics ours.)

The exact wording was contained in the instant stipulation for an award, and the substance thereof, as previously shown, was con-

tained in the award itself. It requires no argument to support the plain fact that if the parties had not expressly desired to stipulate for an award they would not have used that form of application. Had the parties not intended to stipulate for an award no such formality would have been required. In that event they would have proceeded under those particular provisions of G. S. 1935, 44-527, which specifically provide for settlement by agreement and final receipt. In that event the commissioner would simply have accepted, receipted for, recorded and indexed the agreement and final receipt as directed by that statute. According to the plain provisions of that statute, those enumerated acts of the commission alone constitute approval by the commission and no other action is required to constitute an approval of an agreement by the parties. Clearly, that is not what was done in the instant case at all. Nor is that what the parties intended to have done or what the commissioner intended to do. They intended from the beginning until the award was formally made to make an award which would contain all the elements of finality and nothing else. No other reasonable conclusion can possibly be reached from the undisputed record. No amount of fine-spun argument, under the futile guise of liberalism, can alter the plain facts. The record speaks for itself and it leaves no possible doubt on that subject. This was an award.

The foregoing facts, however, are only a part of the undisputed printed record which completely reveals, in addition to the award and the procedure mentioned, that the commissioner fully intended to make an award. And at this point I confess some little difficulty in maintaining a judicial temperament. It is pressed upon us with great emphasis, in a petition for rehearing, that the majority of this court are in error as to what the commissioner intended to do and that if only the commissioner of compensation could be heard we would have no difficulty in concluding no award was intended to be made. Let us pursue the contention. What does the printed record of the commission disclose on that specific point? The present attorneys for claimant, after the award had been entered, wrote the commissioner for a blank form of application to set aside what they termed *an agreement or settlement*. In answer to that letter the commissioner wrote them a letter on June 4, 1938, which clearly and convincingly disclosed not only that he, the commissioner, had entered and filed an "award" on November 2, 1937, but it also disclosed that over seven months after the award had been made and

filed, he, the commissioner, very definitely interpreted his own official action as constituting an "award," and insisted that it must be so regarded and that the commission had no jurisdiction in the matter after final payment of an award. That straightforward letter reads:

"JUNE 4, 1938.

"Stephens & Harman, Attorneys at Law, Columbus, Kansas.
"Att'n: Mr. Jerome Harman. Re: Docket No. 6471, Virgil A. Farr v. Mid-Continent Mining Co., Self-insurer.

"GENTLEMEN:

"We have for acknowledgment your letter of June 1, asking for the files in the above-entitled matter, and further asking if we have any regular printed forms for use where a claimant is seeking to have *an agreement or settlement* set aside on the ground of mutual mistake.

"In reply you are advised that the commission does not send out the files in cases, nor do we have any regular printed forms for making application to set aside a final release on the ground of mutual mistake. No general form is required. A simple written request in a letter to set aside a *final release* because of mutual mistake would be sufficient for the commission to set the matter for hearing.

"*The above case, however, is quite different. The claimant made a full, final and complete settlement of his claim by joint petition and stipulation,* which was executed on the 30th day of October, 1937, and filed with the commissioner on November 1, 1937, wherein the parties settled their differences for the sum of $150.48. Accompanying that joint petition *and stipulation was a doctor's report and the claimant's affidavit, stating that the lump sum would be more beneficial to him than the payment of weekly compensation.* In accordance with this settlement, *the commission entered an award* on the 2d day of November, 1937.

"The matter having been *fully settled and finally closed, the commission would have no further jurisdiction.* We are sending you herewith a copy of the *award* and a copy of a letter written to the claimant regarding this matter.

"We trust this will give you the information you are seeking.

"Very truly yours,

"JM:n                                    "JAMES MALONE, *Commissioner.*
"Incs." (Italics ours.)

No subsequent change of position by the commissioner, regardless of the cause or causes which occasioned that change of position, relative to what he had done on November 2, 1937, can erase the clear and unambiguous disclosure of what he in fact did do as disclosed by the "award" itself, nor can it efface his manifest intention to render an "award" as disclosed by his own letter deliberately written over seven months thereafter. This was an award and was definitely intended to be an award. Those indelible facts simply will not blot out. Liberal interpretation is not the proper term to

apply to a judicial process which ignores the award itself, the plain intent to render an award, and the official's own original and subsequent interpretation of his act as constituting an award.

Next, can an award be set aside "after final payment"? G. S. 1935, 44-528, pertains to the modification and cancellation of an award. That section now provides that, *"at any time before, but not after the final payment has been made* under or pursuant to any award or modification thereof agreed upon by the parties," such award or agreement to modify the award may be set aside. Prior to the 1927 general revision of the compensation act, the words "but not after," were not contained in that section. They were expressly added in the 1927 revision. Just what was the intent and purpose of that amendment? The legislative intent prior to 1927 obviously was already quite apparent. Moreover, prior to 1927 this court quite clearly and on various occasions had indicated, as shown by cases now cited and quoted from in the second majority opinion, that an "award" could not be modified or set aside "after final payment." I do not concur in the statement contained in the majority opinion that the lawmakers in 1927 added the words "but not after," for the purpose of reaffirming our previous decisions. Those decisions required no affirmance by the legislature. I do agree the lawmakers manifestly added the particular words "but not after," to make doubly sure their own intention should clearly appear. Irrespective, however, of what the precise reason or reasons may have been for adding the words "but not after," it is crystal clear the intent of the lawmakers was to enact a statute in which their own intent would be made certain beyond all doubt. If, however, they added the words "but not after," in order to indicate their agreement with our interpretation of legislative intent, the result is equally clear. That intent was to definitely fix a time at which an award became absolute and final and could not be disturbed by either the workman, employer or insurance carrier. It apparently was finality with which the lawmakers were concerned. That intent is so perfectly clear that I simply cannot bring my intellect or conscience to overthrow the plain legislative will under the pretense of so-called liberal construction. Moreover, this court, since our first decision in the instant case, has again recognized the legislative intent of G. S. 1935, 44-528, by holding that an award cannot be set aside after final payment. (*Yehle v. Stamey-Tidd Const. Co.*, 150 Kan. 440, 94 P. 2d 328.)

I might well end the opinion here. Some other questions, however, have been raised on some of the petitions for rehearing and in the dissenting opinions, which I prefer to answer.

It is contended G. S. 1935, 44-521, indicates that the instant action is governed by the provisions of G. S. 1935, 44-527, and not by G. S. 1935, 44-528. It should be carefully noted exactly what was in-tended by G. S. 1935, 44-521. It reads:

"Compensation due under this act may be settled by agreement; subject to the provisions contained in section 27 [44-527] of this act."

Manifestly the contention is unsound. True, compensation may be settled by agreement subject to G. S. 1935, 44-527. The latter statute outlines the procedure or steps to be taken in order to effect a settlement of compensation. It does not, however, as I shall presently show, deal with the subject of setting aside an award. Moreover, the mere fact a settlement for compensation may be made subject to the provisions contained in section 44-527 has nothing to do with a party's right to set aside either an agreement of settle-ment or an award.

Another question raised is, Can G. S. 1935, 44-527 and 44-528, which I shall refer to hereafter as sections 27 and 28, be construed so as to enable each to stand? The answer unquestionably is, yes. In *Walker v. Kansas Gasoline Co.*, 130 Kan. 576, 287 Pac. 235, the purpose of each section was stated as follows:

"It is to be observed that the *steps* provided for in section 27 are to be taken before the commission and section 28 *provides for a review of the matters enumerated in section 27;* that is, of an award or modification thereof agreed upon by the parties, and may be reviewed by the commission for good cause shown upon the application of either party." (p. 580.) (Italics ours.)

Each section has its proper function in the scheme of our com-pensation law. The first part of section 27 enumerates the steps to be taken by the employer at the time of making final payment and also provides what the commission shall do in connection with a final settlement or award. The first portion of the same section in-cludes, among other methods of settlement, the making of an award. But now, let it be clearly observed, that the proviso of that section, which limits the time to one year within which proceedings may be instituted to set aside an agreement, release or receipt, does not include an award. Only section 28 provides for setting aside an award. Section 27 does, however, provide for setting aside, within one year, an *agreement of the parties* which modifies an award, also

a release or final receipt, which were the identical instruments involved in the case of *Walker v. Gasoline Co.*, supra. Those were the exact facts which enabled this court in the Walker case to hold the claimant was entitled to relief under the provisions of section 27, and that he was not barred by section 28, although he moved for relief after final payment. The syllabus in the Walker case reads:

"The commission empowered to administer the workmen's compensation act of 1927 has jurisdiction to hear and determine an application to set aside an *agreement, release and final receipt,* upon ground of mutual mistake, fraud or misrepresentation, and to award such compensation as is equitable and just." (Syl.) (Italics ours.)

The next question presented is whether there is any overlapping in sections 27 and 28. The candid answer must be, yes. But let it be noted the overlapping plainly is not with respect to the setting aside of an award, because section 27, as previously stated, does not attempt to provide for the setting aside of an award. A careful reading of the two sections will, however, disclose they each provide for the setting aside of an agreement of the parties, modifying an award. So, in the Walker case, *supra,* with both sections applicable to that case, the court properly applied the statute most favorable to the workman. That constituted liberal interpretation in favor of the workman and with such interpretation I am in complete accord. But the Walker case, *supra,* so strongly relied upon by claimant and the minority of the court, is no authority in support of the contention that an actual award may be reduced in effect to the level of a mere agreement between the parties or that an award may be set aside after final payment in utter disregard of plain legislative intent. It thus clearly appears, that while sections 27 and 28 partially overlap, yet each section has a definite function to perform in our scheme of the workmen's compensation law. It is also very clear that a desire to maintain the purpose and functions of each requires that we do not disregard the plain intent of section 28 to the effect that an award cannot be set aside after final payment.

What about the contention that the commissioner had no authority to make the award in a lump sum, and that it must be set aside notwithstanding the award was made, and the lump sum was paid at the instance and request of the workman and for his special benefit? The affidavit of the workman filed in accordance with the rule of the commission for a lump-sum settlement and in conformity with the administrative policy and practice of the commission, reads:

"Virgil A. Farr, upon first being duly sworn on his oath, deposes and says that in his opinion the lump-sum settlement will be more beneficial to him than the payment of a weekly compensation, for the reason that by the investment of that amount of money, he can secure lighter employment, which will, for the time being at least, not further endanger the existing condition in his lymphatic circulatory system, which apparently the contusion to his ankle aggravated."

The commissioner, being fully advised in the premises, approved the affidavit which was a part of the stipulation, and made the award in a lump-sum settlement in the interest and for the benefit of the workman. The contention concerning the lump-sum settlement is purely an afterthought. Such contention was not even remotely suggested in the application to set aside the award. In that application the alleged reasons for setting aside the so-called agreement of the parties were stated at great length, but not one word was mentioned in support of the instant contention. Irrespective of that fact, the contention is not only entirely too technical, but it is fundamentally unsound. That contention, if sustained by this court, certainly would be no kindness to the numerous workmen who have in the past and who in all probability will in the future desire a lump-sum settlement in times of dire need and distress. Nor was such an unfavorable policy against the interests of a laboring man ever intended by the lawmakers.

It is true G. S. 1935, 44-525, provides the award shall not be made for payment of compensation in a lump sum. It is also true that under the provisions of G. S. 1935, 44-531, the employer possesses the right to redeem the compensation made payable under an award after having paid thereunder for six months. In like manner the workman, under the provisions of G. S. 1935, 44-529, is authorized to receive payment in a lump sum if it satisfactorily appears the security of his compensation is in doubt. But here again it must be remembered that the last two sections mentioned pertain to the rights of the employer and employee to pay or receive a lump-sum settlement and not to power of the commissioner to make an award in a lump sum upon request based upon the express agreement of the parties. Obviously, those sections do not prohibit the commissioner from making an award for a lump-sum payment based upon an agreement of the parties. In *Lehman v. Grace Oil Co.*, post, p. 145, 98 P. 2d 430 (this day decided), this court definitely held that we are not permitted to disregard any provisions

of the compensation act which clearly indicate or tend to reflect the legislative will. Now, G. S. 1935, 44-512, provides:

"The payments shall be made at the same time, place and in the same manner as the wages of the workman were payable at the time of the accident, but the commission upon the application of either party may modify such regulation in a particular case as to the commission may seem just."

Considering these various provisions together, as they must be considered, we can reach only one conclusion. That conclusion is the lawmakers manifestly intended the commissioner could not on his own initiative compel the employer to pay or the workman to accept a lump-sum award of compensation except as permitted by law. On the other hand, we are forced to conclude that the commissioner is authorized to make a lump-sum award upon the express agreement of the parties if under the circumstances such lump-sum award in the judgment of the commissioner seems just. Such interpretation brings all sections into harmony and enables the commissioner to do what was done in the instant case. And that was the established practice and policy of the commission in the administration of the compensation law.

Now, what is the underlying theory of not permitting original awards for lump-sum settlements and payments in the absence of agreement? The theory is that the exact effect of an injury upon a workman is more or less speculative and if time is permitted to elapse before final payment opportunity is then given for having the award modified, that is, increased or diminished, as the facts warrant. (*Chikowsky v. Central Coal & Coke Co.*, 124 Kan. 471, 474, 260 Pac. 620, and cases cited.) It is contended in the instant case that under G. S. 1935, 44-528, an award could not have been made in a lump sum, but must be made in installments for future compensation. It has always been conceded by the majority that such award could not have been forced upon the workman or employer. In this case plain fairness prohibits this court from setting aside the award. The lump-sum award was equivalent to future installment payments for about eleven weeks. That future compensation was in addition to compensation previously paid over a period of weeks by installments. The lump sum agreed upon as being complete compensation was equivalent to additional future installment payments to January 8, 1938. Even though we should hold that claimant would not be precluded from setting aside the award at any time before final payment would have been made by installments on Janu-

ary 8, 1938, the claimant yet would not be permitted to set aside the instant award. The reason is perfectly obvious. The instant application for modification was not filed until June 6, 1938, a period of approximately five months after the regular installment payments, according to the agreement of the parties, would have been finally made. How can it then be said that payment of compensation in a lump sum in any manner deprived claimant of any rights he would have possessed had the compensation been finally paid in installments? The undisputed facts simply preclude our doing so upon any sound theory of the compensation law, including a theory of the most liberal kind of interpretation.

Can it be thought for a single instant, that under the same circumstances this court would permit an employer to repudiate such an award for a lump-sum settlement which the commissioner in good faith was induced to make at the instance and request of the employer and for his special benefit? The answer is not open to doubt. This court in all probability would have disposed of such a contention by an employer in a few lines. It undoubtedly would have said the commissioner had authority, upon the express stipulation of the parties, to make the award for a lump-sum settlement. It undoubtedly would have said that result must follow for another reason, which is, that if any possible doubt could be entertained on the subject, the employer was in no position to complain of an alleged error he induced the commissioner to make for his own special benefit. Should this court hold otherwise in the case of an employer, I should be obliged to dissent from the decision as definitely as I am now objecting to the conclusion of the minority. If the beneficent purposes of the compensation act are to be preserved—as we all agree they must be—then there cannot be one rule against an employer and a different rule in favor of the employee under the same identical facts.

The dissenting opinion of Mr. Justice Harvey expresses his concern and desire that sections 27 and 28 be interpreted so as to harmonize and that each section be held to have its proper function to perform in the scheme of our compensation law. Such a concern and desire is highly commendable and reflects a proper judicial attitude. I have endeavored to show that, while there is a slight overlapping in these two sections, yet each section was intended to have and does have its separate functions to perform and that the legislative intent cannot be effectuated without applying the manifest intent of section

28 as well as the obvious purpose of section 27. I have also endeavored to state my views relative to other questions quite properly discussed in that opinion.

I regret very much indeed that in the dissenting opinion, attached to our first opinion published in July, 1939, the author of that dissenting opinion felt obliged to attempt to label the justices who hold the majority view, and who do not happen to agree with him, as advocates of strict construction. As for myself, I refuse to discuss such an accusation in an opinion of this court. I prefer to discuss the merits of the lawsuit. Since, however, the so-called advocates of strict construction were challenged in that opinion to state what answer they had to make to certain questions therein propounded, I have endeavored to set forth the reasons which impelled my own conclusions. I am entirely willing to leave the merit of those reasons and conclusions to the fairness and good judgment of a neutral bench and bar.

I am authorized to state that Mr. Justice Thiele concurs in the views herein expressed.

Hoch, J. (concurring specially): I concur in Justice Wedell's analysis of the statutes in question and in the additional arguments in support of the majority opinion. The view that the instant "award" duly made and so designated by the commissioner, with all parties represented, cannot have the finality provided for by the section which deals with the making of awards, because, forsooth, the parties agreed upon the facts, by stipulation, instead of establishing the same facts by oral testimony, seems to me to be wholly untenable. Moreover, such a holding would utterly discourage amicable agreements between employers and employees. Neither employer nor employee would ever be safe in stipulating the facts in a proceeding before the commissioner, leading up to an award. In order to safeguard the award from attack by the other party at some indefinite time in the future each would have to go to the expense and inconvenience of producing the witnesses even though there be complete agreement on what the testimony would show. It must be obvious that such a situation would be far more detrimental to the interests of employees than of employers. It would violate the liberality which the workmen's compensation act contemplates and enjoins.

HARVEY, J. (dissenting): I am concerned to see sections 27 and 28 of our workmen's compensation act (G. S. 1935, 44-527, 44-528) construed so as not to be in conflict, but so that each has a function to perform in the scheme of the law. Presumably the legislature regarded them as applying to different situations, or both would not have been embodied in the same act. Our last general revision of the law (Laws 1927, ch. 232) was the result of legislative consideration of the conflicting ideas of opposing groups viewed in the light of the experience of previous legislation on the subject. The result was a new set-up in handling this class of injuries of workmen. A compensation commission was created, with administrative and judicial functions, where settlements between workmen and employers were to be recorded and approved and claims not settled were to be heard and determined. The jurisdiction of courts was limited to appeals from the compensation commission. A new procedure was devised. This was designed to eliminate technical rules of evidence and procedure applicable to cases in courts of record, the purpose of this being to enable the compensation commission more readily to get to the real merits of the matters involved in any accidental injury of the workman to whom the act is applicable. The natural rights of the parties to agree were recognized, even encouraged, but with the thought of avoiding injustice such agreements were made subject to the approval of the compensation commission. To avoid injustices which had arisen under previous acts, a few definite rules of procedure were laid down; for example, that in the absence of an agreement between the parties a claim for compensation must be in writing and made within a specified time (G. S. 1935, 44-520a), and that appeals to the courts should be taken promptly and within a time specified (G. S. 1935, 44-556); but these specific provisions are not involved here.

The legislature was endeavoring to be fair both to employers and employees within the purview of the act. It is clear the legislature intended that a workman entitled to compensation under the act should not be barred therefrom because of some irregularity in procedure not by the act made specifically imperative or essential.

In this case the trial court found that the workman was "totally and permanently disabled as a result of said accidental injury and is entitled to compensation for a period not to exceed 415 weeks at the rate of $13.68 per week," and also found, "this is an extreme case and that the claimant is entitled to medical and hospital expense in

an amount not to exceed $500." The court rendered its judgment and decree in harmony with these findings. Nowhere in the numerous briefs filed, or arguments made on behalf of appellant in this case, is there any contention that these findings are unsupported by the evidence. The facts that the parties were operating under the workmen's compensation act; that claimant's wages were such that his compensation for injuries under the act would be computed at $13.68 per week; that he sustained an injury by accident arising out of and in the course of his employment, as a result of which he is totally and permanently disabled; and that it is an extreme case, authorizing the expenditure of the maximum amount for hospital and medical attention, are nowhere controverted by appellant. If claimant is defeated in receiving what ordinarily he would be justly entitled to receive, it is because the position of the appellant must be sustained on one or both of the points argued in its behalf.

Appellant contends the judgment of the trial court must be reversed and judgment rendered for respondent for one or both of two reasons: *First*, and primarily, because on November 2, 1937, the compensation commissioner, upon an agreement and stipulation of the parties, made a lump-sum *award* of $150 (in addition to compensation of $150.48 previously paid), which sum was paid promptly, and claimant's receipt therefor was filed with the compensation commissioner November 15, 1939, and approved; that the proceedings to set aside that order and receipt were begun June 6, 1938, and that under section 28 of the act (G. S. 1935, 44-528) a petition for review and modification of an *award* must be filed before final payment of the *award*. It is argued that since an *award* was made by the commissioner in November, 1937, section 27 of the act (G. S. 1935, 44-527) has no application, and since the final payment of the *award* was made in November, 1937, a petition to have it reviewed and modified, filed in June, 1938, is too late.

*Second*, appellant contends that even if section 27 of the act is applicable, the evidence is insufficient to support the finding of the trial court that the agreement and stipulation entered into between the parties in November, 1937, upon which the compensation commissioner acted, was entered into as a result of a mutual mistake. I shall not dwell on this point further than to say that as I read the evidence it is sufficient to sustain the finding of the trial court.

Passing provisions for arbitration contained in section 22 (G. S. 1935, 44-522) and mentioned in other sections of the act, and which

are not involved here, I think it reasonably clear from the act as a whole and its several provisions that when a workman is injured, under circumstances which entitle him or his dependents to compensation under the act, two methods are provided for determining the amount of compensation: (a) An agreement between the parties, or (b) the filing of a claim before the commissioner, a hearing thereon, and the making of an award.

Section 21 of the act (G. S. 1935, 44-521) reads:

"Compensation due under this act may be settled by agreement; subject to the provisions contained in section 27 of this act."

Section 27 of the act (G. S. 1935, 44-527) provides, in part, for the filing of such agreements with the compensation commissioner and their approval by him and that no proceeding can be brought by either party to set aside such an agreement later than one year after it is filed. Under this section it was held, in *Walker v. Kansas Gasoline Co.*, 130 Kan. 576, 287 Pac. 235:

"The commission empowered to administer the workmen's compensation act of 1927 has jurisdiction to hear and determine an application to set aside an agreement, release and final receipt, upon grounds of mutual mistake, fraud or misrepresentation, and to award such compensation as is equitable and just."

In this case there was an agreement entered into which was filed with the compensation commissioner November 2, was acted upon and approved by the commissioner, and the receipt filed with the compensation commissioner and approved under the statute. The proceeding to set it aside on the ground of mutual mistake and fraud was begun within a year.

The other method of determining the amount due is by filing a claim for compensation, as provided for by section 41 (G. S. 1935, 44-534) of the act, and a hearing had in conformity with section 34 (G. S. 1935, 44-549), and other provisions of the act. Upon such a hearing the commissioner has no authority to render a lump-sum award. (G. S. 1935, 44-525.)

Now, the real question in this case is whether the compensation commissioner, in November, 1937, did anything more than approve an agreement between the parties. It is true he called what he did the making of an award, because the parties had agreed that he might make an award, but whatever he did was done under and by virtue of the agreement of the parties, and not otherwise. The trial court held that the legal effect of what the commissioner did in November, 1937, was to approve an agreement of the parties author-

ized under section 21, to which section 27 is specifically made applicable. Since that section is specifically made applicable, the provision therein for setting aside the order, or receipt based upon such an agreement, necessarily is applicable. The fact that the commissioner approved a lump-sum payment of compensation indicates that it understood it was simply approving an agreement, notwithstanding the term "award" used therein, and was not making an award after a hearing, for in that situation he had no authority to provide for the payment in a lump sum. The trial court found:

". . . That the award of the workmen's compensation commissioner made on November 2, 1937, amounted to nothing more or less than the written approval by the commission of an agreed settlement entered into by and between the parties and that section 28 of the compensation act (G. S. 1935, 44-528) is not a bar to claimant's cause of action, and that, under section 27 of the compensation act (G. S. 1935, 44-527) claimant is entitled to relief on the ground of mutual mistake of fact."

It is my judgment that the finding and judgment of the trial court is correct and that it should be affirmed.

SMITH and ALLEN, JJ., concur in the dissenting opinion of Mr. Justice HARVEY.